(15 App. Div. 606.)

ARNOLD et al. v. R. ROTHSCHILD'S SONS CO.

(Supreme Court, Appellate Division, Second Department. April 13, 1897.)

LANDLORD AND TENANT—ACTION ON LEASE—PROOF OF RENT.
Plaintiffs claimed that defendant had taken a lease of their property. The broker who was alleged to have transacted the business testified that one R., representing defendant, spoke to him about renting the premises, but objected to the amount of rent, in reply to which he suggested that an offer of $5,000 would probably be accepted; that R. said he would take the premises at $5,000, and authorized him (the broker) "to close it"; that, after conferring with one of the plaintiffs, the broker wrote R. that he had "closed the lease" at the specified rental; and that the reply to the letter

was a memorandum saying that R. was "satisfied." The broker did not state what occurred at the conference with plaintiffs, and there was no evidence that plaintiffs agreed to reduce the rent or to make a lease. *Held*, that the evidence was not sufficient to sustain a finding that a lease was made.

Appeal from trial term, New York county.

Transferred from the First department.

Action by Morris Arnold and Milton S. Arnold, comprising the firm of M. Arnold & Co., against the R. Rothschild's Sons Company, for rent. From a judgment entered on a verdict in favor of defendant, and from an order denying a motion for a new trial, plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Nathan Ottinger, for appellants.

Benjamin N. Cardozo, for respondent.

WILLARD BARTLETT, J. This is an action to recover two months' rent, upon an alleged lease, for one year, of certain premises on Broadway, in the city of New York. The defendant corporation interposed a general denial to the complaint. The agent through whom the lease was said to have been made was a real-estate broker named Leon Tannenbaum, and the evidence in behalf of the plaintiffs to prove the contract consisted chiefly of his testimony and certain correspondence between him and Messrs. A. M. & David Rothschild, who represented the defendant corporation in New York. As to the correspondence there was no dispute, but there was a direct conflict of evidence as to what had passed between Tannenbaum and the Rothschilds orally, David Rothschild positively denying that he was present at certain interviews in which Tannenbaum swore that he participated. The proof upon the trial related chiefly to two questions: First, whether the Rothschilds were authorized to negotiate and enter into a lease for the defendant corporation; and, secondly, what actually was said between them and Tannenbaum with reference to the contemplated hiring of the premises occupied by the plaintiffs. In the view of the learned trial judge, the oral and written evidence offered in behalf of the plaintiffs, even taken alone, was such as to afford support to conflicting inferences; and he therefore referred it to the jury to say, not only whether the Rothschilds or either of them had authority to bind the defendant by entering into a lease in its behalf, but also whether what occurred between the Rothschilds and the plaintiffs actually constituted a lease, or merely amounted to an agreement to enter into a lease at some future time.

Much of the argument of the learned counsel for the appellants is based upon the proposition that, where the language used by the parties to an alleged contract is not the subject of dispute, the interpretation and construction of that language is a question for the court, and not for the jury. Many cases are cited to this effect, and, on the other hand, the learned counsel for the respondent finds high authority for submitting to a jury questions as to the meaning to be given to the language employed by parties to a contract, where

that language is equivocal, and its interpretation may depend upon the relations of the persons by whom it was used, and upon other surrounding circumstances. It does not seem to me necessary, however, to determine whether the trial court in the present case was right in applying the first of these rules, instead of the second; for I do not think the evidence for the plaintiffs was sufficient to sustain a verdict in their favor, in any event.

Stating the plaintiffs' case as favorably as the record will warrant, it amounts to this: The Rothschilds, being authorized by the defendant, an Ohio corporation, to obtain a lease of property for it in the city of New York, conferred with Leon Tannenbaum, a real-estate broker, for that purpose, and talked with him about taking a store at No. 472 Broadway. The rent was mentioned as being $5,500 a year, but the Rothschilds wanted it reduced below that sum. Tannenbaum said he thought that, if they would submit an offer for $5,000, he could get the store, to which they responded that, if he could get the store at $5,000, they would take it, and they authorized him "to close it." Tannenbaum conferred with Mr. Arnold (presumably one of the plaintiffs) shortly afterwards, and on the same day wrote and sent to the Rothschilds a letter addressed to the defendant corporation, in which he said: "I have closed the lease for you, as directed, with Mr. Arnold, of store and basement, 472 Broadway, for one year from February 1st, 1892, at $5,000 rental, payable monthly." The messenger who took this letter received from one of the Rothschilds, for Mr. Tannenbaum, a memorandum in writing, signed by A. M. Rothschild, in these words: "Yours received. Mr. R. is satisfied." Now, if, in addition to this, there was any proof in the case that Tannenbaum actually had seen the plaintiffs or either of them, and actually had made the agreement with them set out in his letter to the defendant corporation, there would be great force, I think, in the argument that the transaction amounted to a complete lease. As matter of fact, however, there is no such evidence in the record. Tannenbaum does not anywhere swear that the plaintiffs ever agreed to reduce the rent to $5,000, or indeed to make any lease at all, nor is there testimony to that effect from any other source. He does say that he conferred with Mr. Arnold, but he tells us nothing about what occurred in that conference; and, if the contents of his letter are to be regarded as referring to it, they avail nothing as proof, for they lack the sanction of any verification under oath. This omission seems to me fatal to the success of the plaintiffs upon the present appeal. No material evidence offered in their behalf was excluded, and, giving to that which was admitted the most favorable interpretation, the complaint should have been dismissed.

I am in favor of the affirmance of the judgment and order appealed from. All concur.